Sifford *vs.* Morrison, *et al.*

(Decided 8th January, 1885.]

JOHN E. SIFFORD, Surviving Executor of JOHN SIFFORD *vs.* J. FRANK MORRISON, and others.

*Construction of sec. 1, of Art. 91, of the Code—Counter-Security.*

Where application is made in virtue of section 1, of Article 91, of the Code, to the Orphans' Court, to require counter-security to be given by an executor or administrator, it is the imperative duty of the Court to so order, the word "*may*" being peremptory.

APPEAL from the Orphans' Court of Frederick County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, and IRVING, J.

*James McSherry,* for the appellant.

*Milton G. Urner,* for the appellees. (The Court declined to hear argument in behalf of the appellees.)

YELLOTT, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Frederick County requiring the appellant, the surviving executor of John Sifford, deceased, to give countersecurity. The death of the said John Sifford occurred in the year 1878; he having made and executed a last will and testament which was duly admitted to probate. Letters testamentary were granted to John Loats and John E. Sifford, the appellant, who, on the 18th day of November, 1878, filed in the Orphans' Court their bond, as executors of said will, with the appellees as securities. Not long afterwards the said John Loats died, and the appellant is now the surviving executor of the last will and testament of John Sifford, and the appellees are liable under the obligations of his bond.

The appellees, apparently dissatisfied with the manner in which the appellant was discharging his duties as surviving executor, invoked the interposition of the Orphans' Court by the passage of an order requiring him to show cause why his account should not be restated; and on the 27th day of March, 1884, in pursuance of their remedy accorded by statutory provisions, the said appellees, by petition, asked the Orphans' Court for an order for counter-security. In conformity with the tenor of this petition,.

Sifford *vs.* Morrison, *et al.*

which was supported by affidavit, an order *nisi* was passed; which on the application of the appellant was supplemented by a subsequent order granting an extension of the time within which to show cause why the relief sought for should not be obtained by the final action of the Court. In obedience to the exigency of this order the appellant filed an answer to the petition of the appellees. The Orphans' Court, having duly considered the matters made apparent by this answer, on the 16th of June, 1884, determined that the language of the statute was mandatory; and in performance of the duty thus ascertained, passed an order requiring the appellant to give counter-security. An appeal from this order has brought the questions involved in controversy into this Court for final determination.

The proceedings, which terminated in this appeal, involved the construction, by the Orphans' Court, of the language of the Code, Art. 91, sec. 1, which is in these words:

"If any security, or any counter-security of an executor or administrator, or any person interested in the estate of any such security, or counter-security, shall conceive himself in danger of suffering from the securityship, he may apply to the Orphans' Court which granted the administration, and the said Court may require the party to give counter-security, to be approved by the Court," &c., &c.

On behalf of the appellant it has been strenuously argued that the phraseology of the statute, confers on the Court a discretionary power which it may either exercise or decline to exert at its option, after having judicially inquired into the verity of the averment, constituting the basis of the application for the relief designated by the statutory provision. If this position were tenable it would be difficult to perceive how an exercise of the revisory powers of this Court could be invoked in view of the numerous decisions which militate against the right of appeal in all such cases.

The word "*may*" in the statute was construed by the Orphans' Court as mandatory and obligatory, and therefore leaving no margin within which there might be an exercise of discretionary powers. This construction is in strict conformity with the interpretation ·of the same phraseology found in an Act of Parliament in *Alderman Backwell's Case*, 1 *Vernon*, 152; an interpretation which seems to have been subsequently respected and adopted in all similar cases in England and in this country.

In that case the creditors of Backwell, by petition, asked for a commission of bankruptcy against him, and the Lord Keeper ordered that a commission should issue unless cause to the contrary were shown within a designated period. An application was afterwards made for a suspension of the operation of this order, so as to afford an opportunity for an investigation and ulterior arrangements. But "the Lord Keeper declared, that though the words in the Act of Parliament were, that the Chancellor *may* grant a commission of bankrupt, yet that (*may*) was in effect (*must*), and it had been so resolved by all the Judges. And the granting of a commission was not a matter discretionary in him, but that he was bound to do it."

In *Rex & Regina vs. Barlow*, 2 *Salk.*, 609, there was an indictment for non-performance of duty designated by statute; and as matter of defence it was contended that the word *may* in the Act of Parliament, rendering the performance optional, the omission to perform did not present a proper case for criminal procedure. But the Court held that "where a statute directs the doing of a thing for the sake of justice or the public good, the word *may* is the same as the word *shall*."

A similar construction may be found in a multitude of English authorities recognizing this principle as applicable in analogous cases. *King vs. Inhabt. of Derby, Skinner*, 390; *Rex vs. Commissioners of Flackwood Inclosure*,

2 *Chitty*, 251; *Dwarris on Statutes*, 712. In *Stamper vs. Millar;* 3 *Atk.*, 212, Lord HARDWICKE draws a distinction between private trusts, created by deed or otherwise, and duties imposed by statute. The Chancellor intimates that the word *may* in the former often leaves scope for the exercise of an election by the trustees, while in the latter the same word imports obligation. There seems to have been a recognition of this principle as constituting a fundamental rule of construction in all the American cases in which the question has been presented. *Newburgh Turnpike Co. vs. Miller,* 5 *John. Ch.,* 113; *Mayor, &c. of City of New York vs. Furze,* 3 *Hill,* 612; *Malcom vs. Rogers,* 5 *Cow.,* 188; *The People vs. Supervisors of Columbia Co.,* 10 *Wend.,* 363.

This Court has on several occasions declared the principle of construction to be that "Where a statute confers power upon a corporation to be exercised for the public good, the exercise of the power is not merely discretionary, but imperative, and the words 'power and authority,' in such case, may be construed duty and obligation." *Mayor & C. C. of Balt. vs. Marriott,* 9 *Md.,* 160; *Mayor & C. C. of Balt. vs. Pendleton & Harlan,* 15 *Md.,* 12; *Comm's of Pub. Schools vs. County Comm'rs of A. County,* 20 *Md.,* 449; *County Commissioners of A. A. Co. vs. Duckett,* 20 *Md.,* 468.

In *Mason, et al. vs. Fearson,* 9 *How.,* 248, the words "it shall be lawful" have a construction which gives them a mandatory operation.

In the more recent case of *The Supervisors of Rock Island Co. vs. United States,* 4 *Wall.,* 435, is found an elucidation of the principles of construction by the Supreme Court which renders apparent the reason of the rule. The Court says: "The conclusion to be deduced from the authorities is, that where power is given to public officers, in the language of the Act before us, or in equivalent language—whenever the public interests or individual

rights call for its exercise—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depository to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless. In all such cases it is held that the intent of the Legislature, which is the test, was not to devolve a mere discretion, but to impose a positive and absolute duty."

The statute certainly gives the appellees the right to ask for counter-security. It also says that the Orphans' Court *may* enforce that right in the manner prescribed. The authorities already cited decide that the word "*may*" when so used is mandatory; and such was the construction which controlled the action of the Orphans' Court. The recognition of this rule of construction was strictly proper and correct. Acting in obedience to the mandate of the law that Court clearly committed no error, and the order appealed from should therefore be affirmed. .

*Order affirmed, and*
*cause remanded.*

(Decided 8th January, 1885.)