March *vs.* Fidelity and Deposit Co.

(Decided 19th June, 1894.)

PHILIP MARCH, JR., Administrator of PHILIP MARCH, *vs.* THE FIDELITY AND DEPOSIT COMPANY OF MARY-LAND.

*Corporation as Sole surety—Application for Counter-security on Administrator's bond.*

A corporation " authorized to become sole surety in all cases where by law two or more sureties are required for the faithful performance of any trust or office," is not deprived of the right to require an administrator, upon whose bond it is surety, to give counter-security as provided by section 1 of Article 90 of the Code, by the provision in the Act of 1890, ch. 263, defining the powers of said corporation, that it shall be lawful for said corporation to stipulate and provide for indemnity from the parties for whom it may become responsible as surety, and to enforce any bond, contract, agreement, pledge or other security made or given for that purpose.

APPEAL from the Orphans' Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON C. J., BRYAN, ROBERTS, MCSHERRY and BRISCOE, J.

*Joseph P. Merryman,* for the appellant.

*Thomas S. Baer*, (with whom was *N. Winslow Williams,* on the brief,) for the appellee.

BRYAN, J., delivered the opinion of the Court.

The Fidelity and Deposit Company was surety on the administration bond of Philip March, Junior. It filed a petition in the Orphans' Court of Baltimore City, stating that it conceived that it was in danger of suffering loss by reason of the suretyship, and praying that the administrator might be required to give counter-security. After answer by the administrator and a hearing, the Court passed an order requiring him to give counter-security. The administrator has appealed. Article 90, section one of the Code, provides that any security of an executor or administrator who shall conceive himself in danger of suffering from the suretyship may apply to the Orphans' Court which granted the administration, and the Court may require the administrator to give counter-security. It has been decided that the words of the Code are mandatory, and that they impose a positive and absolute duty on the Orphans' Court to grant the relief prayed. *Sifford vs. Morrison, 63 Maryland,* 14. It will be seen that the language of the Code is very comprehensive. It gives the right to proceed in the manner mentioned, to *"any"* security; it includes all and excludes none. The security in the present case must be entitled to the benefit of this provision of the Code, unless the law has in some way made a special exception against it, and denied to it the rights which belong to securities in general.

We will consider this question. The Act of 1890, chapter 263, conferred on the Fidelity and Deposit Company of Maryland the right to become security for the faithful performance of any trust, office, duty, contract or agreement; to go on any appeal or other bond; and to "become sole surety in all cases where by law two or more sure-

ties are required for the faithful performance of any trust or office." When the statute enabled this corporation to become a surety, it described a relation perfectly well known and understood in law. Certain rights, duties, responsibilities and functions belong to the condition of suretyship; and they are all necessarily and conclusively implied when one lawfully becomes a surety. These incidents must attach to the suretyship in this case, unless the statute, which authorized it, establishes and defines a difference between it, and the contracts of ordinary sureties. One clause of the section which we have quoted was the subject of a good deal of comment in the argument. It is in these words: " And it shall be lawful for said company to stipulate and provide for indemnity from the parties aforesaid for whom it shall so become responsible, and to enforce any bond, contract, agreement, pledge or other security made or given for that purpose." It is one of the valuable rights of a surety that he may recover indemnity from his principal for any loss sustained by his defalcation or dereliction. From the nature and justice of the case the law conclusively infers a contract on the part of the principal that he will save his surety harmless. The clause in question gives this corporation the means of fortifying this implied contract, and making it more effective by conferring the power to exact security for its performance. Everything which is expressed indicates the granting of a privilege; and we may say a privilege reasonable and proper. Its exercise could do wrong to no one, and might become necessary for protection against great injustice. There is no indication of a purpose to withhold or abridge any right whatsoever. The general statute gives the surety of an administrator the right to obtain from the Orphans' Court an order that the principal shall give counter-security; now it would be very unreasonable to hold that this right is constructively annulled by the grant of a privilege

which shows on its face merely the ostensible purpose of protecting a surety against wrong and injustice at the hands of his principal. It would produce this very singular and anomalous result, that a grant of power to a corporation intended to furnish it with the means of protection from loss would, by legal construction, operate so as to prohibit it from seeking in a Court of justice an ordinary remedy prescribed for the prevention of wrongs.

We are of opinion that the statute of 1890, chapter 263, does not deny to this corporation the rights belonging to other sureties; and we shall therefore affirm the decree of the Orphans' Court.

*Affirmed, with costs.*

(Decided 19th June, 1894.)