# THE PHILADELPHIA, BALTIMORE AND WASHINGTON RAILROAD COMPANY

*vs.*

# THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Equity*: *practice; preliminary legal questions. Baltimore City: assessments for benefits for local improvements. Fallsway: construction; delegation of power to Commission on City Plan, or Commissioners for Opening Streets; special funds provided by Chapter 110 of Acts of 1910; assessments for benefit. Commissioners for Opening Streets: powers and duties. Municipal corporations: power from Legislature to* • *delegate authority; discretion.*

Under section 205 of Article 16 of the Code of 1912, a court of equity may have preliminary questions of law determined before the trial of any issue of fact in the case.          p. 507

The power to assess property in particular localities to the extent that it is deemed specially benefited by local improvements is one that has been expressly granted to the Mayor and City Council of Baltimore, and one that the City has long exercised.                           p. 508

Such a right is to be referred to the power of taxation.  p. 508

By section 175 of the Charter of Baltimore City, the Commissioners for Opening Streets are required to assess benefits whenever they are directed by. ordinance to act in connection with street projects; the exercise of such power is not to be denied the commission merely because of the creation of a spe-

cial fund for the purpose of providing the costs and expenses of the improvements.                                        p. 510

Exemptions from taxation are to be strictly construed.
                                                        p. 510

Chapter 110 of the Acts of 1910, relating to the construction of the Fallsway in Baltimore City, did not qualify or restrict the charter power of the City or of the Commissioners for Opening Streets to assess property specially benefited by the undertaking; a City ordinance empowered the Commissioners to condemn and open the thoroughfare by procedure in accordance with the said Act, and in accordance with such of the provisions of the City Charter as might be applicable; it was *held,* that the fact that the Act provided for a fund to meet the cost and expenses of the improvement, had no effect on the power of the City and the Commissioners to assess for benefits.        p. 510

The right to assess such benefits does not depend upon the insufficiency of the fund intended to meet the expenditure with which the municipality is primarily chargeable.        p. 511

No considerations of public interest or private right make it proper to hold that by the permissive terms of Chapter 114 or Chapter 110 of the Acts of 1910 (as to the creation of the Commission on City Plan), the City of Baltimore was *required* to delegate to the commission the execution of the plan contemplated for the construction of the Fallsway.        p. 514

When Acts of the Legislature leave to a municipality the authority to delegate certain powers to different commissions, the discretion as to which agency should be selected is in the municipality.                                        p. 514

The acquisition of the "adjacent land" authorized by Chapter 110 of the Acts of 1910, in connection with the Fallsway, was such as might be incident to the accomplishment of that object.
                                                        p. 513

*Decided June 26th, 1913.*

Appeal from the Circuit Court of Baltimore City (DUFFY J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*John J. Donaldson,* for the appellant.

*S. S. Field, the City Solicitor,* for the appellee.

URNER, J., delivered the opinion of the Court.

The Acts of 1910, Ch. 110, p. 639, authorized and empowered the Mayor and City Council of Baltimore to open, construct and establish a public highway in the city along or over the bed of Jones' Falls, and "to delegate to the Commission known as the 'Commission on City Plan' the duty and power of opening, constructing and establishing" the highway, and to confer by ordinance on the Commission the power to acquire by purchase or condemnation the property to be used in connection with the improvement, and such other powers possessed by the City in relation to the opening and construction of highways and acquiring property therefor as it might deem proper to be so delegated. It was enacted that "for the purpose of providing the moneys requisite for opening, constructing and establishing said highway, and purchasing or acquiring said property, the Mayor and City Council of Baltimore is hereby authorized to issue the stock of the said corporation to an amount not exceeding one million dollars ($1,000,000.00)." The Act required that the question of issuing the stock should be first submitted to the voters of the City, and it directed that before the City should proceed to open and construct the new thoroughfare, an ordinance for that purpose should be passed and the property to be acquired should be designated upon a plat. The approval of the voters having been given to the project, in the manner contemplated by the Act, and by section 7 of Article 11 of the

Constitution of the State, the Mayor and City Council passed an ordinance (No. 70, approved February 9, 1912) authorizing the *Commissioners for Opening Streets* to condemn and open in pursuance of Chapter 110 of the Acts of 1910 the proposed highway over and along Jones' Falls, to be known as the "Fallsway," in accordance with a detailed description, and a plat duly prepared and filed, indicating the outlines of the improvement and condemnation. A supplemental ordinance (No. 114, approved May 28, 1912) conferred upon the same Commissioners authority to acquire property for the highway by purchase or other voluntary method.

In the course of their proceedings for the opening of the Fallsway the Commissioners for Opening Streets assessed certain sums as benefits against property belonging to the appellant. The present suit was then instituted with a view to having the City restrained from collecting the assessments on the ground that they were illegal and void. The specific points of objection were: first, that the cost of the highway was intended by the Act of 1910 to be paid out of the proceeds of the stock for which it made provision, and that consequently the City had no power to impose any part of the cost upon property owners by way of assessments for benefits; and, secondly, that the only body, to which the powers granted by the Act were authorized to be delegated, was the Commission on City Plan, and that the ordinances attempting to make such a delegation to the Commissioners for Opening Streets were, therefore, invalid and the proceedings of the Commissioners ineffective. These questions, after the filing of the answer and general replication in the Court below, were proposed by the complainant and adopted by the Court as preliminary questions of law which it was convenient to have determined before the trial of any issue of fact in the case, as permitted by section 205 of Article 16 of the Code. The appeal is from an order sustaining the validity of the assessments as against each of the contentions thus submitted.

The objection that benefits are not assessable on account of the improvements because a special fund has been appropri-

ated for that object is fully met by the decision of this Court in *Lauer* v. *Baltimore,* 110 Md. 447. In that case an assessment for benefits in connection with the opening of a street in the Baltimore City Annex was resisted on the ground that the Acts of 1904, Chapter 274, created a loan of two million dollars which was to "be used only for the purpose of providing the costs and expenses of condemning, opening, grading, paving and curbing the streets, avenues, lanes and alleys" of that portion of the City. This position was held to be untenable. In the opinion, by JUDGE THOMAS, it was said: "The right to assess property in particular localities to the extent that it is deemed specially benefited by local improvements is to be referred to the power of taxation and has been recognized and sanctioned in all the States. The theory on which such assessments are made is that, 'those whose property is thus enhanced, and who thus receive peculiar benefits from the improvements, should contribute specially to defray its cost.' 1 *Lewis, Eminent Domain,* sec. 5 (2nd ed.) ; *Gould* v. *Mayor, etc., of Baltimore,* 59 Md. 378 ; *Hagerstown* v. *Startzman,* 93 Md. 609. The power to make such assessments has been expressly granted to the Mayor and City Council of Baltimore and has been exercised by it for a long time. *Alexander* v. *Baltimore,* 5 Gill, 383." The provisions of section 6 of the City Charter (Acts of 1898, Chapter 123) are quoted in the opinion to the effect that the Mayor and City Council are authorized to provide for laying out, opening, extending, widening, straightening or closing any streets, lanes, squares or alleys in the City and to provide for ascertaining damages and assessing benefits resulting from such improvements. The Act of 1904 created the Annex Improvement Commission, and authorized it to exercise certain specified powers in reference to the condemnation, opening, etc., of thoroughfares in the Annex, and such further powers and duties as the Mayor and City Council might deem necessary for the proper execution of the improvements designed, but it was provided that authority might be conferred by ordinance

upon the Commissioners for Opening Streets, in lieu of the first-named Commission, to carry out the purposes of the statute. By an ordinance passed in pursuance of this Act the Commissioners for Opening Streets were empowered and directed to perform the duties and functions provided by the Act for the Annex Improvement Commission, and it was ordained that the procedure of the Commissioners in the premises should be "that now or hereafter prescribed by law in relation to their ordinary duties and powers of the same nature." The procedure of the Commissioners for Opening Streets was thus generally defined in part by section 175 of the City Charter: "Whenever the Mayor and City Council of Baltimore shall hereafter by ordinance direct the Commissioners for Opening Streets to lay out, open, extend, widen, straighten or close up, in whole or in part, any street, square, lane or alley, within the bounds of this City, the said Commissioners, having given the notice required by law of their first meeting to execute the same, shall meet at the time and place mentioned in said notice, and from time to time thereafter, as may be necssary, to exercise the powers and perform the duties required of them by said ordinance, and shall ascertain whether any and what amount of value in damage will thereby be caused to the owner of any right or interest in any ground or improvements within or adjacent to the City of Baltimore for which, taking into consideration all advantages and disadvantages, such owner ought to be compensated; and the said Commissioners, having ascertained the whole amount of damages for which compensation ought to be awarded, as aforesaid, and having added thereto an estimate of the probable amount of expenses which will be incurred by them in the performance of the duties required of them, as aforesaid, and also of the expenses incurred by the City Register by reason of said proceedings, shall proceed to assess all the ground and improvements within and adjacent to the city, the owners of which, as such, the said Commissioners shall decide and deem to be directly benefited by accomplishing the object authorized * * *."

The Commissioners for Opening Streets being thus required by the City Charter to assess for benefits whenever they were directed by ordinance to act in connection with street projects, and having been charged in the *Lauer case* with the duty of following the procedure prescribed by law, it was held that they had full power to make the assessments there in controversy, and that the exercise of the authority thus expressly conferred should not be denied merely because of the creation of a special fund "for the purpose of providing the costs and expenses" of the improvement. This conclusion was predicated upon the general rule that exemptions from taxation are to be strictly construed; and since the charter expressly provided for such assessments, and the Act creating the special fund made no reference to the subject, there was found to be no support for the contention that the property affected by the proceedings before the Court was exempt from liability to be assessed on account of the resulting benefits.

The present case is controlled by the same considerations. There is nothing in the Act relating to the Fallsway to qualify or restrict the Charter power of the city or of the Commissioners for Opening Streets as a duly constituted municipal agency, to assess property benefited by such an undertaking, and the ordinance empowering the Commissioners to "condemn and open" this thoroughfare expressly directed that their procedure should be in accordance with the Act of 1910, Ch. 110, and such provisions of the City Charter as might be applicable. The assessments in this case have, therefore, been made under an authority which the Commissioners clearly possessed and were required to exercise, and upon the principle applied in the *Lauer case* we can have no hesitation in holding that the mere creation by statute of a fund to meet the costs and expenses of the improvement does not affect the efficiency of this power of assessment or relieve the appellant's property of a charge to which it is subject under the general and affirmative terms of the law.

It is argued that the *Lauer case* is distinguishable from the one now being considered in the fact that the street improve-

ments anticipated for the Annex were so extensive as to just-ify the view that the Legislature could not have expected the proceeds of the two million dollar loan to cover the costs and expenses, while in the present instance the fund provided may be regarded as adequate for the object to which it is to be applied.  The decision in the *Lauer case* did not proceed upon such a theory, and we have been unable to accept the distinction thus suggested.  The Act of 1910, in reference to the Fallsway, authorized stock to be issued "for the purpose of providing the moneys requisite" for the project, and the Act of 1904, relating to the Annex, directed the proceeds of the loan to "be used only for the purpose of providing the costs and expenses" of the improvements there specified. These provisions are substantially similar, and neither Act purports to deprive the City of the power to assess for bene-fits or to make its exercise depend upon the insufficiency of the fund intended to meet the expenditures with which the municipality is primarily chargeable.

There was another ground suggested for distinguishing the *Lauer case* from the present.  The Act of 1904 authorized the City to confer upon the Commissioners not only the powers granted by the Act, but also such further powers as the Mayor and City Council might deem necessary for the proper execution of the improvement, and the ordinance passed in pursuance of this authority, having imposed upon the Com-missioners the duties prescribed by the general provisions of the Charter, including that of making assessments for bene-fits, it is urged that the situation was entirely different from the one here shown where, it is said, the City had no author-ity to exercise or delegate any powers beyond those expressly given by the Act of 1910, which did not in terms provide for such assessments.  The question whether the City had the right to delegate to the Commissioners for Opening Streets the power and duty to open the Fallsway is one of the issues of law raised in this case, and is yet to be determined, but assuming that the City could legally make such a delegation,

there can be no doubt, in the absence of any provision to the contrary in the Act of 1910, that the Commissioners in the execution of this work are subject to the requirements already quoted from the Charter as to the procedure to be followed by them *whenever* they are directed by ordinance to open *any* highway within the limits of the City, and this procedure, as already shown, involves the ascertainment and assessment of benefits.

It is insisted that authority to proceed under the provisions of the Act of 1910 could not be validly conferred by ordinance upon the Commissioners for Opening Streets. The argument is that this statute gives to the City the power of acquiring, in connection with the opening of the Fallsway, and of selling after its completion, the land *adjacent to,* but not included within, the proposed highway, and that as the acquisition and re-sale of property so located could not be accomplished independently of the Act of 1910, the execution of its purposes could not have been intended to be delegated to any agency other than the Commission on City Plan, to which the duty was expressly authorized to be committed. In *Bond v. Baltimore,* 116 Md. 683, the provision thus mentioned was held to be valid as against the objection that with respect to land adjacent to the highway the Act attempted to provide for the taking of private property for other than public use. The opinion by JUDGE BRISCOE in that case, after quoting the language of the statute authorizing the City to acquire "for said purposes land or other property in the bed of the highway and adjacent thereto," said: "The use of the expression 'to acquire for the said purposes' in the act plainly limits and designates the purpose for which property may be taken by the City * * *. In other words, we think, it is clear that the only purposes for which property is authorized to be condemned are those set out in Section 1 of the Act, to wit, for the purpose of establishing a public highway over Jones' Falls * * *. And this being so, there can be no possible or serious dispute that the use for which property may

be acquired and can be taken under Section 1 of the Act is for a public use." It is thus settled that the acquisition of *adjacent land* authorized by the statute in connection with the opening of the Fallsway was such as might be incident to the accomplishment of that object. If nothing had been said in the Act on the subject of the delegation of the power it granted to the City, it cannot be doubted that the Mayor and City Council could have directed the Commissioners for Opening Streets to carry out the purposes of the Act, for the City Charter, in Section 172, provides that "The said Commissioners shall be charged with the duty of opening, extend ing, widening, straightening or closing any street, lane, alley or part thereof, situated in Baltimore City, whenever the same shall have been directed by ordinance to be done, and shall perform such other duties as the Mayor and City Council of Baltimore may by ordinance prescribe." It is clear, in view of this provision of the Charter, that the Commissioners for Opening Streets could have had validly conferred upon them, and were legally qualified to perform, the duties specified in Ordinances 70 and 114 in connection with the opening of the Fallsway, unless the right of the City to require, and their capacity to accept, this service had ceased to exist as the result of an enactment authorizing the Mayor and City Council to impose the same duties upon the Commission on City Plan. The functions of that Commission are defined by Chap. 114 of the Acts of 1910, p. 649, by which it was created. It is provided that the Commission "shall investigate all plans proposed for the construction or extension of public highways in the City of Baltimore and the establishment of a civic center or other public improvements in connection therewith, and shall report the results of such investigations from time to time to the Mayor and City Council, and shall perform such other duties and exercise such other powers as may be delegated to it or as may be prescribed by ordinance not inconsistent with this article." This provision was enacted as part of the City Charter. The City

was not *required* by the Act of 1910 to delegate the execution of the contemplated work to the Commission on City Plan. There are no considerations based upon public interests or private rights which make it proper to hold that the permissive terms of the statute in this connection should be construed as obligatory. *Sifford* v. *Morrison,* 63 Md. 14; *State* v. *Knowles,* 90 Md. 655. The right to open the Falls-way and acquire property for that purpose was given to the municipality itself, and there was obviously nothing mandatory in the mere authorization to commit the project to the agency mentioned. It is clear that the omission of the City to make the particular delegation thus permitted did not deprive it of the power, expressly granted by the Act, to proceed with the improvement. The Act of 1910 must be interpreted with reference to the existing and general provisions of the Charter to the effect that the duties of opening highways in the City shall be performed by the Commissioners for Opening Streets. The later enactment merely created an alternative agency to be employed at the option of the Mayor and City Council for this particular project. The Charter provided for the delegation of such a duty to the *Commissioners for Opening Streets,* while the Act of 1910 authorized it to be committed to the *Commission on City Plan,* and, as both provisions are in force, the question as to which of these duly qualified agencies should be charged with the performance of this service was plainly intended to be left to the discretion of the municipality in which the main power is vested.

In our opinion the Court below correctly determined the questions of law presented by the record.

> *Order affirmed, with costs and cause remanded.*