JAMES M. SEYBOLDT AND IVA C. SEYBOLDT

*vs.*

## THE MAYOR AND COMMON COUNCIL OF MOUNT RANIER, A BODY CORPORATE.

*Acts of Legislature that are to be subject to ratification by popular vote: form of ballots; clerical errors; when unimportant.*

The mistake of a mere clerical officer will not be permitted to render void an action which had been legally taken.      p. 73

If an Act of the Legislature is to be effective only if ratified by the voters at a special election, provided for by the Act, is approved by such majority, it should not be set aside merely because the form of ballot used at such election was not in exact accordance with the form prescribed in the Act.    p. 74

*Decided January 12th, 1917.*

Appeal from the Circuit Court for Prince George's County.   In Equity.   (BEALL, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Gerald F. Kopp,* for the appellants.

*Ogle Marbury* (with whom was *J. Enos Ray* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The record in this case presents an appeal from a decree of the Circuit Court for Prince George's County, by which a demurrer to a bill of complaint was sustained, and the bill dismissed.

The scope and purpose of the bill are well set out in the opinion which was filed in the lower Court, as follows:

"The bill is filed on behalf of the plaintiffs and all other taxpayers and owners of real estate abutting on the streets of said town, and prays that the Mayor and Common Council of Mount Ranier may be enjoined from, (1) issuing any bonds or obligations binding the town of Mount Ranier and the plaintiff's property therein under the provisions of said Chapter (94 of the Acts of 1916), and (2) from issuing the bonds of town in the amounts and payable as alleged in the bill, and (3) from levying or collecting any assessment against the property of the plaintiffs under said Act for the making of such improvement or for the payment of such bonds or interest or any other purpose.

"The bill sets forth at length the plaintiff's reasons for injunction, contending that the proposed assessment is unlawful and confiscatory because the Act does not provide or permit a hearing with respect to assessments or benefits that the front-foot assessment is unconstitutional; that the delegation of legislative power to the voters by requiring an election before the Act goes into effect renders the Act unconstitutional; that the special election to determine whether or not the sewerage system should be adopted was not properly called; that insufficient notice of the election was given; that the form of the ballot used at the election, which read for or against 'water and sewerage' instead of 'Water and Sewers' was not proper; that a copy of the ballot was not properly published as required by the charter; that the calling of a special meeting of the Council on the 27th of April to receive the returns was invalid, and that the votes were not properly canvassed, and that the bonds about to be

issued are not in accordance with the provisions of the
Act because they are about to be issued in two series,
and because in this way $4,000 of the principal and
interest is to be paid in each of the third and fourth
years of the issuance, and that since the bonds are to
be numbered one to fifty, only $50,000 worth of said
bonds can be issued; that even if it should be held
that the defendants can issue $100,000 worth of bonds,
they must mature within not over 27 years from the
date of issue, and that since the town can pay $4,000
in the third and fourth years, it has the necessary
authority to continue such payments each year, which
would make the final bonds payable 27 years after the
date of issue, and any payment after that time would
not be authorized."

Most of the objections which are urged to the validity of
the Act are technical merely, and are fully covered by the
opinion of this Court in the case of *Carr* v. *Hyattsville,* 115
Md. 545, to which more extended reference will be made
later.

The bill in this case again attacks the validity of a front
foot assessment, notwithstanding the decisions of this Court
in *Hyattsville* v. *Smith,* 105 Md. 318; and *Lyon* v. *Hyatts-
ville,* 125 Md. 306; and it does this upon a decision in the
Supreme Court of the United States in the case of the *Gast
Realty Co.* v. *Schneider,* 240 U. S. 55, decided in the early
part of the present year.

That case was one brought to collect a paving tax in the
City of St. Louis, where by a somewhat peculiar provision
of the Charter, one-fourth of the cost of a local improvement
was to be levied upon property upon the front foot basis, and
three-fourths according to area. The lot upon which the as-
sessment had been levied was peculiar in its shape, and the
ordinance by which the improvement was authorized, and the
tax levied, was characterized by MR. JUSTICE HOLMES as
"a farrago of irrational irregularities throughout; that it dis-

tributed the tax in grossly unequal proportions, not because of special considerations applicable to the portions taxed, but in blind obedience to a rule which required that result." In the opinion, however, JUSTICE HOLMES re-affirms the validity of a tax for local improvements levied in accordance with the front foot rule, and the present plaintiffs can derive no assistance from the decision in that case.

The Act under which this contention arises is far from being well drawn. In both its title and the body of the Act the authority is given to Mount Ranier to borrow and issue its bonds to the extent of $100,000, for the purpose of establishing and constructing a water and sewerage system for the town.

The Act further specifies the denomination of said bonds to be $1,000 each, and in the same section provides that they shall be numbered from 1 to 50, both inclusive. This would seem to be a plain contradiction of the amount of indebtedness authorized; but still later in the section it is provided, "that not more than fifty thousand dollars thereof shall be expended in the construction of the sewerage system and that the balance of said funds shall be used in the construction of the water system herein provided for."

It is thus evident that what the Legislature had in mind was an issue of $50,000 worth of bonds for the construction of a water system, and an issue of a like amount of bonds for the construction of a sewerage system, the two aggregating the $100,000, which the Act in terms authorized, and so compliance with the Act could only be had by issuing the bonds as two series, one for the water and the other for the sewerage.

Much stress was laid in the brief of the appellants upon a supposed non-compliance with the charter requirements as to the entry and record of the passage of a measure by the City Council, but the appellants do not assert that the provisions of the Charter were not complied with, only that the original

record as made by the clerk did not set out in full the compliance with those requirements.

It is alleged that subsequently, upon the matter being discovered, the clerk was directed to correct his record, and that he did so correct it in a form to fully meet the charter provisions, and there is no allegation that the correction which the clerk was directed to make was untrue in fact. It never has been accepted as a proper rule of law, that the mistake of a merely clerical officer would be permitted to render void an action which had been legally taken.

The form of the ballot was not in the exact language of the Act of Assembly; but it is sufficient to say, as disposing of this, as was said by this Court, speaking through JUDGE BURKE, in *Carr* v. *Hyattsville,* 115 Md. 545: "It is not alleged that the voters were deceived, mislead or confused by the form of the ballot as actually prepared; nor is there any charge of fraud against the voters or election officers. Nor is it claimed that the result of the election as declared by the Mayor and Common Council was not correct. * * * In general those statutory provisions which fix the day and the place of the election and the qualification of the voters are substantial and mandatory, while those which relate to the mode of procedure in the election and to the record and return of the results are formal and directory. * * * The rules prescribed by the law for conducting an election are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes and to ascertain with certainty the result. Generally such rules are directory and not mandatory, and a departure from the mode prescribed will not vitiate an election, if the irregularities do not deprive any legal voter of his vote or admit an illegal vote or cast an uncertainty on the result, and have not been occasioned by the agency of a party seeking to derive a benefit from them. * * * The plain purpose of the Legislature was that this Act should become effective if approved by a majority of the voters of the special election, and the object

74    SEYBOLDT vs. M. & C. C. OF MT. RANIER.

Opinion of the Court.                    [130

of providing the form of ballot was to ascertain the will of the majority of the voters on the question of its approval, and since that majority did approve the act under the form of ballot used, which was substantially, but not strictly, in the words provided in the act, the will of the majority should not be set aside for any of the reasons stated in the bill. The voters undoubtedly knew they were voting upon the question of the approval or disapproval of the act, and having settled that question at a fair election, the object which the Legislature had in view has been gratified, and the act should be held to be in full force and effect. This conclusion is supported by what appears to be the great weight of authority in the American courts."

Criticism was also leveled at the amount of notice given in connection with the special election, and the meeting of the Common Council as a canvassing board, but a careful examination of the charter of Mount Ranier, and of the Act of 1916, fails to disclose a non-compliance with any mandatory statutory requirement.

Nor is the objection any more tenable which is made upon the failure to provide in the Act for notice to, and an opportunity to appeal from, the levy of a tax for the payment of the interest on the loan authorized, and its ultimate repayment. Provision was made for this as part of the taxes to be levied, and the general laws of the State amply protect any owner of property liable to taxation, with a right of appeal to the Circuit Court for the county.

It follows from what has been said, that the decree of the Court from which this apeal has been taken should be affirmed.

*Decree affirmed, with costs.*