JAMES F. DOUTY, JR., *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 66, January Term, 1928.]

*Decided April 11th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Frank B. Ober,* with whom was *Stuart S. Janney* on the brief, for the appellant.

*A. Walter Kraus, City Solicitor,* and *Allen A. Davis, Assistant City Solicitor,* for the Mayor and City Council of Baltimore, for the appellee.

*Robert France,* submitting on brief, for the Baltimore Trust Company and others, appellees.

SLOAN, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court No. 2 of Baltimore City, denying an injunction to the plaintiff, who is the appellant, on a special case stated, under section 221 of article 16 of the Code, wherein the appellant, a citizen and taxpayer of Baltimore City, sought the opinion of the court as to the legality of certificates of indebtedness about to be issued by the Mayor and City Council of Baltimore under the authority of the Act of Assembly of 1927, ch. 431, entitled:

> "An act to authorize the Mayor and City Council of Baltimore to issue certificates of indebtedness of said corporation to an amount not exceeding one million five hundred thousand dollars ($1,500,000), the same to be expended for the purpose of acquiring land and improvements for establishing an airport for land and sea planes."

It was provided by section 1 of the act:

> "That the Mayor and City Council of Baltimore be and it is hereby authorized to issue the certificates of indebtedness of said corporation to an amount not exceeding one million five hundred thousand dollars ($1,500,000), said certificates of indebtedness to be issued from time to time and for such amounts, payable at such periods, and to bear such rate of interest, all as the Mayor and City Council of Baltimore shall by ordinance from time to time provide; but no stock or bond shall be issued in whole or in part unless the ordinance of the Mayor and City Council of Baltimore providing for the issuance thereof shall be submitted to the legal voters of Baltimore City at such time and place as may be fixed by said ordinance and be approved by a majority of the votes cast at such time and place, as required by section 7 of article 11 of the Constitution of Maryland."

And by section 2:

> "That the proceeds of said certificates of indebtedness, not exceeding their par value hereby authorized

to be issued, shall be used for the acquisition by purchase or condemnation of land and/or improvements on land for the purpose of establishing and maintaining for public purposes an airport in the City of Baltimore to thereby afford suitable landing facilities for accommodating land and sea planes."

And by section 3, that:

"Said certificates of indebtedness when issued shall bear interest at such rate or rates as may be provided by or under the authority of said ordinance."

In pursuance of this act the Mayor and City Council of Baltimore passed an ordinance, No. 1057, entitled:

"An ordinance to authorize the Mayor and City Council of Baltimore (pursuant to chapter 431 of the Acts of the General Assembly of Maryland of 1927) to issue its certificates of indebtedness to an amount not exceeding one million five hundred thousand dollars ($1,500,000) for the acquisition by purchase or condemnation, of land and/or improvements on land for the purpose of providing and maintaining for public purposes an airport in the City of Baltimore to thereby afford suitable landing facilities for accommodating land and sea planes."

wherein it was provided by section 1:

"That the commissioners of finance be and they are hereby authorized and directed to issue the certificates of indebtedness of the City of Baltimore to the amount of one million five hundred thousand dollars ($1,500,000) from time to time as the same may be required for the purposes hereinabove named; and the said certificates of indebtedness shall be sold by said commissioners of finance from time to time and at such times as shall be requisite and the proceeds of the sale of said certificates of indebtedness, not exceeding their par value, shall be used for the purposes hereinbefore named, provided that this ordinance shall not go into effect unless it shall be approved by a

majority of the votes of the legal voters of the City of Baltimore cast at the time and place hereinafter designated by this ordinance";

And by section 2:

"Said certificates of indebtedness when issued shall bear interest at such rate or rates as may be determined by the commissioners of finance at the time when any of said certificates are issued."

And by section 4:

"That this ordinance shall be submitted to the legal voters of the City of Baltimore for their approval or disapproval at the municipal election to be held in Baltimore City on the first Tuesday after the first Monday in May, 1927";

And by section 5, that:

"A copy of this ordinance and notice of the time for holding said election shall be published in at least two of the daily newspapers published in said City of Baltimore twice a week for two weeks prior to said election, the first publication to be not later than April 18, 1927."

It appears from the case stated that, in pursuance of the act of assembly and Ordinance No. 1057, the question of the approval or disapproval of the ordinance and proposed loan was submitted to the voters of the City of Baltimore at the regular municipal election held on the first Monday of May, 1927, there being printed on the official ballot at that election the following:

"Airport Loan.

"Ordinance No. 1057, Approved April 13, 1927.

"An ordinance to authorize the Mayor and City Council of Baltimore (pursuant to chapter 431 of the Acts of the General Assembly of Maryland of 1927) to issue its certificates of indebtedness to an amount not exceeding one million five hundred thou-

sand dollars ($1,500,000) for the acquisition by purchase or condemnation of land and/or improvements on land for the purpose of establishing and maintaining for public purposes an airport in the City of Baltimore to thereby afford suitable landing facilities for accommodating land and sea planes.

| | |
|---|---|
| For Ordinance | |
| Against Ordinance | |

"

on which said proposal there were 66,445 votes cast in the affirmative and 22,665 in the negative, so that there can be no question in this case about the approval of the loan, if the voters of Baltimore were sufficiently advised of the question upon which they undertook to vote.

In pursuance of said statute, ordinance, and election, the board of commissioners of finance of Baltimore, by unanimous vote, on December 29th, 1927, adopted the following resolution:

"Resolved, that the Mayor and City Council of Baltimore be and it is hereby authorized to issue $1,500,000 Airport Serial 1933-1967 Loan, Series 1933-1962, inclusive, for $43,000 each, and Series 1963-1967, inclusive, for $42,000 each. That said loan be issued in the form of coupon bonds of $1,000 denomination, dated October 1st, 1927, registered as to principal only, and that they bear interest at the rate of 4% per annum"; etc.

The commissioners of finance advertised all of the certificates of indebtedness authorized by the act for sale or issue upon sealed proposals and, on January 10th, 1928, accepted the bid of the Baltimore Trust Company of Baltimore and Hambleton & Company of Baltimore, at $103.18 for each $100 of said bonds, they being the highest bidders therefor.

The legality of the said proposed certificates of indebtedness and of the power of the Mayor and City Council of Baltimore to issue the same are questioned upon the following grounds:

(a) That chapter 431 of the Acts of 1927 and Ordinance No. 1057 of the Mayor and City Council of Baltimore do not comply with the provisions of article 11, section 7, of the Constitution of Maryland, in that neither the statute nor the ordinance specifies the rate of interest to be charged, "as required by the Constitution."

(b) That chapter 431 of the Acts of 1927 "pledges the credit of the city to the payment of a debt within the meaning of the Constitution, in excess of the said $1,500,000, namely by the amount of four per cent. interest thereon until paid."

(c) That Ordinance No. 1057 "is void in that it attempts to delegate to the board of finance commissioners the fixing of the rate of interest to be borne by the alleged certificates of indebtedness."

(d) That Ordinance No. 1057 did not prescribe the terms or fix the interest upon the loan, and the interest to be paid was not submitted to the legal voters of the city and not approved by them as required by section 7 of article 11 of the Constitution of Maryland.

(e) That the loan and terms were not properly and legally submitted to the legal voters of Baltimore and approved by them.

(f) That the word "debt," as used in section 7 of article 11 of the Constitution includes interest, both accrued and to accrue, and therefore the submission of the loan without naming the interest thereon was in violation of the Constitution.

The provision of the State Constitution, the violation of which is charged by the appellant in the case stated, is section 7 of article 11, which reads as follows:

"From and after the adoption of this Constitution, no debt (except as hereinafter excepted), shall be created by

the Mayor and City Council of Baltimore; nor shall the credit of the Mayor and City Council of Baltimore be given or loaned to, or in aid of any individual, association, or corporation; nor shall the Mayor and City Council of Baltimore have the power to involve the City of Baltimore in the construction of works of internal improvement, nor in granting any aid thereto, which shall involve the faith and credit of the city, nor make any appropriation therefor, unless such debt or credit be authorized by an Act of the General Assembly of Maryland and by an ordinance of the Mayor and City Council of Baltimore, submitted to the legal voters of the City of Baltimore at such time and place as may be fixed by said ordinance, and approved by a majority of the votes cast at such time and place."

With the exception of the point raised as to the form of the ballot and the question thereby submitted to the legal voters of Baltimore, there is no question involved in this case which, in our opinion, has not been passed upon in *Bond v. Baltimore,* 116 Md. 685, *and Bond v. Baltimore,* 118 Md. 159, favorably to the contention of the appellees, and, because we are of the opinion that the ordinance was properly submitted to the voters, the decree of the Circuit Court of Baltimore City should be affirmed.

It is contended by the appellant that the airport bond issue is illegal because neither the Act of 1927 nor Ordinance No. 1057 specifies the rate of interest to be charged "as required by the Constitution." The cases of *Stanley v. Baltimore,* 146 Md. 277, *and Thom v. Baltimore,* 154 Md. 273, relied upon as authorities for this contention, we think are not susceptible of this construction. What was decided in the *Stanley* case was that the Mayor and City Council of Baltimore, after having submitted the matter of the port development loan under the Act of 1920, ch. 560, and the ordinance passed in pursuance thereof, could not, by ordinance, issue the balance of the loan at a rate different from that fixed by the original ordinance; and in the *Thom* case it was decided that it could not be done under the Act of

1927, ch. 155. There was nothing said in either of these cases from which it might be implied that the Constitution required the rate of interest to appear in an Act of Assembly authorizing the City of Baltimore to incur a debt.

With regard to the power of the municipality and its latitude in fixing the rate of interest on loans, the opinion in the *Stanley* case, at page 293, said:

"The act of the Legislature may authorize the creation of the debt or the extension of the credit in general or particular terms. If the language of the act be specific and definite, the ordinance of the municipality authorizing the creation of the debt or credit must conform; but, if the authority be conferred by the Legislature in general terms, the ordinance may authorize the debt or credit in particular terms, provided these are within the contemplation of the Act of the General Assembly.

"In the thirty-two enabling acts which have been cited in this opinion, all but five provide that the loan shall bear such rate of interest as the Mayor and City Council shall by ordinance prescribe. Of the five exceptions, two prescribe that the rate or rates of interest shall be such as the ordinance shall specify (Acts 1906, ch. 401; Acts 1908, ch. 202); one that the interest shall be at a rate not to exceed three and one-half per centum per annum (Acts 1918, ch. 373); one that the rate shall not be more than four per centum per annum (Acts 1910, ch. 549), and one that the stock shall bear such rate of interest, not exceeding five per centum per annum, as the ordinance shall designate. Every act, however, has this in common, that the municipality is, by ordinance, to fix the rate of interest within the scope indicated.

"These acts exemplify that if the municipality is to be given a limited range in fixing the rate of interest, the provision is made that the rate of interest shall not exceed a certain per centum. Again, if the interest may be at one or more rates, the statute plainly confers the power by the phrase 'rate or rates.' However, if the rate is not limited,

but is to be single and uniform on the whole issue of stock, the laws specify that the loan shall bear such rate of interest as the ordinance shall prescribe."

And then what was declared in that case—in fact the decision was predicated upon it—was that, inasmuch as the Act of 1920 provided for the issuance of city stock "to bear such rate of interest as the Mayor and City Council shall by ordinance provide," the authorization allowed the city by ordinance to fix one rate, and one rate having been fixed in the ordinance submitted to the voters and ratified by them, the unissued part of the loan could not be negotiated at another or lower rate. It held that, once the power under the act had been exercised, it could not be again invoked in another ordinance; and in the *Thom* case it was held that the situation could not be cured by a statute. The decision might have been different if the statute (Act of 1927, ch. 155) had provided for submission to the voters.

In the instant case the statute gives the city more latitude. While the bonds or certificates of indebtedness may be issued at one time and at one rate, they may be issued at different times and at different rates by different ordinances. The act (1927, ch. 431) says they may "be issued from time to time and for such amounts, payable at such periods and to bear such rate of interest, all as the Mayor and City Council of Baltimore shall by ordinance from time to time provide," and "said certificates of indebtedness when issued shall bear interest at such rate or rates as may be provided under the authority of said ordinance." It will be seen from these quotations from the act that part of the loan might have been at one rate, part at another, and each rate provided for by a separate ordinance. What was decided in the *Stanley* and *Thom* cases would apply when the rate on the whole loan was, or the rates on the various portions of it were, fixed. These cases decided that, once the interest rate was fixed, it could not be changed either by ordinance or statute, unless, of course, approved by the voters under a statute providing for submission; and that, when the rate was so fixed, it then,

and not before, became a part of the "debt," and subject to the provisions of section 7 of article 11 of the Constitution.

The appellant asserts that the Mayor and City Council cannot delegate to the finance commissioners the fixing of the rate of interest on the loan. In the case of *Bond v. Baltimore*, 118 Md. 159, the Court of Appeals said, at page 170: "As said above, the statute also provides that the stock shall bear 'such rate or rates of interest as the Mayor and City Council shall by ordinance prescribe." The ordinance provides that said stock shall be issued in sums of not less than one hundred dollars each, redeemable on the first day of October, 1951, and bearing interest at the rate of not more than four per centum per annum. While it does not fix the rate of interest to be paid upon the stock, it limits such rate to four per centum per annum, and the finance commission, in whom is vested the right to sell said stock at the best price obtainable in their judgment, in establishing the rate of interest is restricted to a rate not in excess of four per centum. We do not think the delegation of this restricted discretion here given to the finance commission in fixing a lower rate of interest is unlawful, and especially so when considered in connection with the power vested in them by the act to sell said stock and at the best prices obtainable in their judgment."

It is suggested by the appellant that the ordinance delegating the power to the finance commission to fix the interest on the loan fixes no limit on the rates which might be specified and that they might make it as low as two per centum or as high as ten per centum. The commissioners of finance consist of the mayor, comptroller, register and two persons appointed by the mayor and confirmed by the council. We cannot assume that such a board is going to abuse its power, or wilfully mismanage the city's fiscal affairs. In this instance they fixed the interest rate at four per centum and sold the securities at $103.18 per each $100, the premium, under the Act of 1927, ch. 431, and under Ordinance No. 1057, to be paid into the sinking fund for the redemption of the loan, so that they kept within the bounds

of the maximum rate allowed for city loans and obtained a price for the securities considerably in excess of their par value. While there was no restriction in the ordinance as to the amount of interest to be exacted, the finance commissioners were bound by the provisions of the Act of 1880, ch. 94 (City Charter, sec. 6, sub-sec. 25) to fix the interest rate at not more than five per centum.

The case of *Bond v. Baltimore,* 118 Md., is authority for the delegation of power to the finance commissioners, and the results show no abuse of the power delegated to them by the ordinance.

The contention is made by the appellant that the whole ordinance should have been submitted to the voters, and because the whole ordinance was not printed on the ballot, it was not submitted, and in effect that this is what this court meant in the *Stanley* case, when it said, at page 292, "From the ordinary meaning and grammatical construction of the language of this statute it clearly and necessarily follows that, whatever its draft and form, the whole ordinance as enacted must be submitted for the ratification or rejection of the electorate of the city."

The whole ordinance was not printed on the ballot submitting the port development loan, which was the subject of the *Stanley* case. At the election there was submitted the proposal to issue $26,000,000 at five per centum, one-half of which had been sold when the *Stanley* case was heard. The title of the ordinance was printed on the ballot, and this is the usual manner of submitting a loan ordinance at an election. The ballot shall, in substance, contain a clear and understandable statement of the proposition or ordinance voted on, so that the voters may know what they are voting for or against. The ordinance in this case was published twice a week for two weeks in each of two newspapers. It stated that the proposition to be submitted and voted on was to issue $1,500,000 of bonds for the purchase, condemnation and improvement of land for an airport "to thereby afford suitable landing facilities for accommodating land and sea planes," and that the funds were to be provided by a loan

to be negotiated by the finance commissioners at a rate of interest to be fixed by them. More than sixty-two thousand voters approved the proposition, and the effect of the appellant's contention is to ask us to say that the voters of Baltimore, when they approved the airport loan,, did not know what they were doing. The rule is for the courts to give effect to an expression of the popular will when to do so violates no constitutional or statutory provision. *Carr v. Hyattsville,* 115 Md. 545, 549; 7 *McQuillin, Munic. Corp.,* secs. 414, 416.

The appellant contends that the title of the ordinance bore no indication of the rate of interest the loan was to carry, nor the dates of maturity of the various series of the loan, and did not even designate that the rate of interest was to be left to the uncontrolled or unlimited discretion of the board of finance commissioners, and that this does not constitute a submission of the ordinance to the voters. This court, in *Bond v. Baltimore,* 116 Md. 683, where the titles of the Act of 1910, ch. 110, providing for the improvement of Jones Falls, and of the ordinance passed in pursuance thereof, were attacked, said: "The title of the act and the act itself practically deal with but one subject, and that is the subject of the Jones Falls Highway, or the Jones Falls Improvement," and "We think the act herein questioned is free from the objection here urged against it. It embraces but one subject and this subject is sufficiently described in the title to satisfy the requirements of the Constitution (article 5, section 29), which is here invoked against it." As to the objection to the ordinance in that case, it was said: "The title to the ordinance is almost identical with that of the act. What we have said as to the validity of the act will also apply to the validity of the ordinance, and for these reasons it will not be necessary for us to discuss the objections to the ordinance." In *Phila., B. & W. R. Co. v. Baltimore,* 121 Md. 504, 506, this court said: "The approval of the voters having been given to the project in the manner contemplated by the act and by section 7 of article 11 of the Constitution of the state, the Mayor and City Council passed

138

an ordinance * * * to condemn and open, in pursuance of chapter 110 of the Acts of 1910 the proposed highway over and along Jones Falls, to be known as the 'Fallsway.' " The Jones Falls improvement involved an issue of city stock to an amount not exceeding a million dollars, which was approved by the voters.

In the *Stanley* case, 146 Md. 277, 290, it is said: "It is clear that, with only the exception above set forth, no debt can be created or credit involved unless it have, first, the authorization of an act of the General Assembly, and secondly, the approval of a majority of the legal voters after a submission of the question pursuant to an ordinance."

It is true, as stated elsewhere in this opinion, that the *Stanley* case said the whole ordinance should be submitted, but we do not understand this to mean that the whole ordinance must be printed in full on the ballot. In this case the ordinance had been published and advertised before the election, as required by the terms of the ordinance, as the proposition or the project submitted to the voters; and the title of the act, sufficient under the authority of *Bond v. Baltimore*, 116 Md. 683, was printed on the ballot, and we cannot now assume that more than 66,000 voters who endorsed the project and the loan did not know what they were voting for. The assumption is that they did know, if the required publicity had been given to the ordinance, and what was printed on the ballot plainly indicated that ordinance as the one being submitted and voted upon.

*Decree affirmed, with costs.*

PARKE, J., dissents.