## ALLEN *v.* MAYOR AND CITY COUNCIL OF BALTIMORE et al.

[No. 305, September Term, 1962.]

*Decided February 4, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Edward O. Clarke, Jr.,* with whom were *Richard W. Case* and *Smith, Somerville & Case* on the brief, for appellant.

*Franklin G. Allen,* with whom were *Piper & Marbury, Francis B. Burch, City Solicitor,* and *George W. Baker, Jr., Deputy City Solicitor,* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order in a tax payer's suit declaring that an ordinance of the Mayor and City Council of Baltimore, authorizing the issuance and sale of certain school bonds, had been validly submitted to and approved by the voters at the municipal election of May 5, 1959, despite an admitted failure of the City to advertise the complete text of the Ordinance in advance of the election, as required by the terms of the Ordinance itself.

It should be noted at the outset that there was full compliance with State law. Code (1957), Art. 33, sec. 167 (a) provides: "If questions of local concern are to be submitted for approval to the vote of the people of a county or a municipality the same shall be certified to said supervisors of elections within said period by the county commissioners, county councils or the treasurer of the City of Baltimore, as the case may be, and shall be advertised as herein provided in the case of nominees for county or city offices."

Article 33, sec. 72 (a) states the requirement of advertising in the case of nominees for county or city offices as follows:

"(A) *General provisions.* Within not less than two or more than ten days before an election to fill any public office, the supervisors of elections of each county and in the City of Baltimore shall cause to be published by one insertion in two or more newspapers within such county, and in all the daily papers published in said city which will publish the same at the current rate of commercial advertising, the nominations to office which have been filed with or certified to them under the provisions of this article. If in any county there be but one newspaper published, publication in such one newspaper shall be sufficient. Such publication shall be made in newspapers devoted to the dissemination of general news; and the two newspapers selected if possible, shall represent the political parties which at the last preceding election cast the largest and next

largest number of votes. The list of nominations published by the supervisors of elections shall be arranged, so far as practicable in the order and form in which they are to be printed upon the ballots."

Art. 33, sec. 94 (i) provides: "(i) *Constitutional amendments and referenda.*—Each ballot shall contain a condensed statement in understandable language of every constitutional amendment or other question to be submitted to the vote of the people at any election."

In this case, Ordinance 1835 appeared in summary form on the specimen ballot that was published in The Sun, the Evening Sun, and The Baltimore News Post, one insertion in each, prior to the election.

Article XI of the Maryland Constitution, sec. 7, provides, in effect, that no debt shall be created by Baltimore City unless such debt "be authorized by an Act of the General Assembly of Maryland, and by an ordinance of the Mayor and City Council of Baltimore, submitted to the legal voters of the City of Baltimore, at such time and place as may be fixed by said ordinance, and approved by a majority of the votes cast at such time and place."

Here again, there was full compliance. Chapter 42 of the Acts of the General Assembly of 1959 authorized the indebtedness in question, subject to the passage of an ordinance and submission to and approval by the voters. Ordinance 1835 was duly passed and duly submitted. The Ordinance was approved by 58,664 votes in favor and 15,552 votes against. However, Sec. 5 of the Ordinance imposing the additional requirement of four insertions of the complete text, was overlooked and not complied with. That Section provided: *"And be it further ordained.* That a copy of this ordinance and notice of the time for holding said election shall be published in at least two (2) daily newspapers published in said City of Baltimore twice a week for two (2) weeks prior to said election."

Subsequent to the election, another ordinance was adopted expressly repealing Section 5 of Ordinance 1835, "with the same effect as though the said Ordinance had not directed such publication and to the end and purpose that the said Ordinance shall stand approved notwithstanding the omission of publica-

tion." There was a recital to the effect that the publicity given by other means had satisfied the purpose of the requirement of published notice contained in the ordinance. It is conceded that the requirement repealed was one that might have been omitted from the original ordinance without affecting its validity under the Constitution, State law and enabling act. Indeed, bond issues subsequently authorized have omitted the additional requirement.

The chancellor found as facts that the school loan was the only question on the ballot in the election of May 5, 1959, and that it appeared on the voting machines in large letters, and in accurately condensed form. There was a somewhat lower percentage of voters participating than in the case of previous school loans. There was wide publicity given to the loan, in addition to the publications above mentioned. 400,000 sample ballots were mailed on behalf of the Democratic party, 170,000 leaflets were distributed through the Department of Education and school children, and there were numerous articles and editorials or both in all the leading newspapers. The Chancellor found that the deviation from the prescribed mode did not mislead the voters; on the contrary, they received more information than they would have received from the text of the Ordinance, which spelled out the legal details of the bond issue in formalized language. He found that the small percentage of participating voters was accounted for by the fact that this was a single issue and not a controversial one, there being no public opposition. He found as a matter of construction that the language of Section 5 was merely directory, and that publication was not made a condition precedent. We agree. Cf. *Hitchins v. City of Cumberland*, 215 Md. 315, 323.

We think the case is controlled by the recent case of *Dutton v. Tawes*, 225 Md. 484. We find nothing to the contrary in *Douty v. Baltimore*, 155 Md. 125 or *Stanley v. Baltimore*, 146 Md. 277. Those cases dealt with the fixing of interest rates, and turned on the construction of particular language in the enabling acts. As a matter of fact, in the *Douty* case (p. 136) it was clearly stated that the whole ordinance need not be printed on the ballot. The test there laid down was whether the voters were sufficiently advised as to know what they were vot-

ing for. Cf. *Seyboldt v. Mt. Ranier,* 130 Md. 69, 73 and *Lexington Park v. Robidoux,* 218 Md. 195, 200. See also *Gollar v. City of Louisville,* 219 S. W. 421 (Ky.), cited in the *Dutton* case, *supra* (p. 498), which validated a bond issue that had not been advertised in accordance with the ordinance authorizing it, on the ground of adequate notice. To the same effect, see *Lyon v. County of Warren,* 325 S. W. 2d 302 (Ky.). *Reed v. Pres. of North East,* 226 Md. 229, is clearly distinguishable, for there no election was held.

Since we think the case can be rested squarely on the proposition that there was a showing of adequate public notice in a case involving an election already held, we do not reach the third point argued by the appellee, that the omission to advertise the text of the ordinance was effectively cured by the passage of the subsequent ordinance repealing the requirement and ratifying the election.

*Order affirmed, with costs.*