## ASHTON ALEXANDER AND JOHN WILSON *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.—*December*, 1847.

The act of 1838, ch. 226, enacted that the *M. and C. C. of Baltimore* should have full power to provide for laying out, opening, extending, &c., in whole or in part, any street, &c. within the bounds of said city, which in their opinion the public welfare or convenience may require; to provide for ascertaining whether any, and what amount, in value of, *damage* will be caused thereby, and what amount of *benefit* will thereby accrue to the owner, &c. of any ground within or adjacent to said city, for which such owner &c. ought to be compensated, or ought to pay compensation, and to provide for assessing and levying either *generally* on the whole assessable property within the said city, or *specially* on the property of persons benefited, the whole or any part of the amount of damages and expenses which might be incurred; to provide for granting appeals to *Baltimore* City Court, from decisions of any commissioners who might be appointed under the authority of the city, &c. securing a review of the assessment by a jury. *Held*, that this act was a constitutional exercise of legislative power, and all proceedings of the city in conformity to it valid.

The power of appropriating to a public use the property of individuals, when public necessity or utility requires it, upon securing to the party whose property is sacrificed, a just compensation for any injury he may sustain, resides in the State as a portion of its inherent sovereignty.

It is this supreme power over the property of individuals which enables the State to confer upon our subordinate jurisdictions, both municipal and judicial, the right to take private property, for the purpose of opening streets and roads, when in their opinion it is demanded by the public welfare and convenience, adequate provision being made for indemnification.

The ordinance of the city of *Baltimore*, of the 9th March, 1841, passed to carry into effect the powers granted by the act of 1838, ch. 226, directed the commissioners, after ascertaining the amount of damages and expenses to be incurred in any case, to assess the same on all the ground and improvements within the city, the owners of which, as such, the said commissioners should decide to be benefited by accomplishing the object authorized in the said ordinance—apportioning them in just proportion, according to the value of the benefit, which, in the estimation of the said commissioners, will accrue to each owner of any right or interest claimed in any such ground or improvements—does not subject the individuals embraced by it to an unequal and partial tax, for the prosecution of an improvement in which the whole community is interested.

No burden is imposed by such an ordinance on the person on whom it operates. It is a mere requisition that the owners of property, the value of which is enhanced by the opening of the street, shall pay for the improvement in a ratio to the benefit derived from it.

Extravagant estimates of benefits in such cases may be corrected upon appeal, and by a contest before a jury, which is secured to an aggrieved party.

Assessments equivalent to benefits derived in such cases are equitable.

The ordinance in question exempted certain property, as not benefited, from the assessment to be made under it. If it had appeared in fact, that the property so exempted was benefited, then the ordinance would be void.

Chancery will not interpose, and arrest by injunction the progress of a public improvement in a municipal corporation, upon a mere inferential and argumentative statement with reference to an essential fact omitted in the bill, necessary to establish the complainants right to the writ.

Where an act of Assembly gave a power to a municipal corporation, to provide for opening a street, with a right of appeal, and to a trial by jury, by any party aggrieved, before an inferior tribunal, and the right of appeal was exercised, the Court of Chancery has no jurisdiction to supervise or re-examine the proceedings and judgment of the court, to which the appeal was taken.

APPEAL from the Court of Chancery.

The bill of the appellants, *Ashton Alexander* and *John Wilson*, filed on the 26th January, 1847, charged that by an act of the *General Assembly of Maryland*, passed at its December session, 1838, chapter 226, entitled "An act to vest certain powers in the corporation of the *city of Baltimore*, in relation to streets," the *State of Maryland* purports and attempts to confer upon the *Mayor and City Council of Baltimore*, the full power and authority to provide for opening, laying out and extending, widening, straightening, or closing up, in whole, or in part, any street, square, lane or alley, within the bounds of said city, which, in their opinion, the public welfare or convenience may require; and bestows upon this municipal corporation, the unbounded privilege (heretofore regarded as one of the transcendant attributes of sovereignty) of taking private property and taxing, (and that even under a scheme of partial and arbitrary taxation) and for the taxes charged, selling real estate within the said city; that the said corporation, seeking to provide for the exercise of the powers thus proffered to it by the legislature, passed (on the 9th March, 1841) an ordinance, No. 10, entitled, "An ordinance to provide for exercising certain powers vested in the corporation," in relation to streets in the city of *Baltimore*, authorizing

the appointment of commissioners, to act in effecting the extending, and opening, and changing streets, lanes and alleys, as aforesaid, under said act of Assembly, and the taking of property, and the taxation, (upon the partial basis as aforesaid) and the enforcement of taxation aforesaid, to which ordinance your orators refer; that under said ordinance, there were appointed commissioners, who are and have been acting as such, to wit: *Anthony Miltenberger, John Dushane* and *John F. Hoss;* that by an ordinance of said corporation, passed the 15th April, 1835, entitled "An ordinance providing for the extension of *Fayette* street, the said corporation required that *Fayette* street should be extended easterly from the east side of *Gay* street across *Jones' Falls,* and thence to go in a straight line until it should strike the line of the south side of *Pitt* street, so connecting and opening into one continued street, *Fayette* street and *Pitt* street, said ordinance, among other things, providing and enjoining, as your orators charge, that for said extension of *Fayette* street, and any expenses and damages therefor, any property on *Baltimore* street should *not* be assessed or charged, although, as your orators state, said *Baltimore* street is parallel with *Fayette* street, and next thereto, and within the possible, if not indeed the probable range of fair assessment, even upon the partial scheme of taxation prescribed by the said general ordinance, passed for carrying out the said act of Assembly; and said ordinance for extending *Fayette* street, also exempts the said corporation (constituted, as the incorporating act shows, of the inhabitants of the city of *Baltimore*) from any expense, cost or charge, in relation to, or connected with, said extension of *Fayette* street, except the building of a bridge over *Jones' Falls;* and as regards assessment on property held by said corporation, that the commissioners aforesaid proceeded in the office aforesaid, of extending and opening *Fayette* street, under color of the last mentioned ordinance, by ascertaining and assessing the value of the property, to be taken and appropriated for the said object, and the necessary expenditures, and assessing the amount and damages accordingly, *not as a debt and burden of the public and of the city at large,* but

(in the terms and spirit of said general ordinance) upon particular individuals and corporations, judged (and conjecturally assumed, as your orators believe and charge) by said commissioners to be benefited by said work of extension and opening, in respect of pieces of ground owned by them on or near *Fayette* or *Pitt* street, among which parties so charged were certain religious congregations, whose taxation in that respect was of a large amount in all; that on an appeal from said assessment, and taxation of said commissioners, taken to *Baltimore* City Court, under the general ordinance aforesaid, the said religious congregations were absolved and declared exempt by said court from said assessment and taxation, and from all charge and taxation whatsoever, for or relative to said extension and opening; that thereupon, most unjustly and arbitrarily, and without reference to special benefits of any of the other parties charged, flowing from said extension and opening, the amount of the said taxation from which said religious congregations were relieved, was charged and apportioned (and most unequally too, apportioned) upon and among the remaining taxed parties aforesaid, of which number are your orators; the taxation in some instances being made double the amount assessed as aforesaid by said commissioners; that they were not parties to said appeal, and were unrepresented and undefended before said City Court, as was the case with many of said parties, thus subjected to the increased and aggravated taxation aforesaid; nor had your orators any notice whatsoever of any claim or design or pretension whatsoever, to augment as aforesaid the said taxation already imposed on them by said commissioners, and not brought into question by your orators, nor submitted to the action of said City Court by any appeal on their part; that the tax on your orator *Alexander's* property, which, by the assessment of the commissioners was $368, is now, by the arbitrary increase aforesaid, $436 49; and that your orator *Wilson's* said tax, from (as is believed) $162, is increased to $220 68; that sales were made for the benefit and uses of said extension and opening of certain property taken for said project, and to an amount exceeding *eighteen*

OF MARYLAND. 387

Alexander and Wilson *vs.* The Mayor and C. C. of Baltimore.—1847.

*hundred dollars,* which amount your orators insist and charge should in the taxation reviewed and determined upon under said appeal, have been abated from the whole assessment, and been deducted rateably and distributively from the respective assessments of the parties charged; but your orators charge that no such abatement nor any allowance or consideration whatsoever, for or of said proceeds of sale, was made or had upon the final adjustment and determination aforesaid of the said taxation, in said City Court; that said entire assessment of said commissioners was thus in manner and arbitrarily as aforesaid, passed upon and finally determined by the verdict of a jury in the said City Court, on appeal aforesaid, and under the direction of the judges of said court. And thereby your orators are taxed and required to pay the amounts aforesaid, specified for and in respect of said extension and opening of *Fayette* street, and the said amounts are claimed from them respectively under the said oppressive and invalid act of Assembly, ordinances and proceedings of commissioners, and of jury and court; and the real estate of your orators respectively, in respect of which they are taxed as aforesaid, is liable to be sold and threatened to be sold to satisfy said unjust requirements; that said final assessment has been returned by the City Court aforesaid, to the *Register of the city of Baltimore,* and that the collector of taxes for said city, *Henry Snyder,* is accordingly now claiming payment of the several amounts of assessment aforesaid from your orators respectively, and in default of payment, the several pieces of ground, for which your orators are so taxed, are on the 11th February, 1847, to be advertised to be sold; and your orators are thus in jeopardy of their estate, from the operation of a law, ordinances, and proceedings, contrary to the acknowledged principles of constitutional law, and in defiance of all the safeguards of the citizen's property, and civil liberties; for your orators maintain that not only have the proceedings as now detailed by your orators under said ordinances, been most irregular and arbitrary, and the partial character of the said taxation been most oppressive, but that the said act of Assembly bestowing the supreme powers upon

the said corporation is unconstitutional and invalid, as delegating to a subordinate agency, *an authority and discretion peculiar to the sovereign power*, and to abide with it, and to be exercised by that sovereignty directly and exclusively. But notwithstanding all these irregularities and oppressive procedures, and the utter invalidity of said act of Assembly, and the virtual usurpation of power, although colorably conferred by said act, asserted by said corporation, and to which your orators are about to be subjected, by the penalty of having their property sold, and themselves divested of their rightful estates, the claims aforesaid against your orators are persisted in, and your orators are in imminent hazard of the unjust and onerous exactions aforesaid, all which is against equity, and much to the grievance of your orators. In tender consideration whereof, and for and to the end that the said corporation, the *Mayor and City Council of Baltimore*, may answer the premises, and that said corporation be perpetually enjoined, and prohibited from selling the property aforesaid of your orators respectively, for and in regard to which, they severally are as aforesaid assessed and taxed, and from in any wise claiming, or proceeding to obtain payment of said assessments and taxes from your orators, and that your orators may respectively have such further and other relief in the premises, as may seem proper. Prayer for injunction, enjoining and prohibiting the selling, or offering to sell, any of the property aforesaid, of your orators respectively, for or on account of the assessment, taxation and charges aforesaid against your orators respectively, or any of their property, and from in any wise claiming or proceeding upon, or in relation to said assessments, taxations and charges, until this court's further order in the premises.

The Chancellor (JOHNSON) refused the injunction, stating he could not regard the act of Assembly as unconstitutional; and for the alleged improper conduct of the commissioners, redress might have been had by appeal.

On the 10th day of March, 1847, the solicitor of the complainants filed in the said cause an attested copy of the said

bill, with the following opinion and order of the Honorable STEVENSON ARCHER, Chief Judge of the Court of Appeals.

Opinion of ARCHER, C. J. of *Maryland.*

I think it cannot be contended, at this day, that the act of Assembly of 1838, ch. 226, is unconstitutional.

The appropriation of private property to public use is undoubtedly a high sovereign power; but the practice of our State, from the formation of our government, has sanctioned the delegation of this power to subordinate jurisdictions, both judicial, and municipal.

The power of legislation is a high sovereign power, yet even that has been delegated with certain limitations to municipal corporations, and the power has never been disputed, but has been expressly sanctioned by judicial decision.

Judicial tribunals have been empowered from time to time to open roads for the public convenience, and the county commissioners or levy courts in some of the counties, possess, and exercise that power.

It is not perceived that the assessment of benefits equivalent to damages, if, in fact, the benefits are equal to the damages, on particular districts benefited, can be objectionable. Upon such principles, the roads in the counties are opened; the expenses are either levied on the counties generally, or on the petitioners immediately benefited. Why are roads opened? It is upon the ground that they are conducive to the general welfare; yet the expenses of opening them are levied not on the State, but upon the county benefited, in some instances; and in other instances, on a more circumscribed locality, if that should be found to be more immediately benefited. The determination that assessment of expenses cannot be made, as was contemplated to be done under this law, would in fact overturn nearly our whole system of county and city expenditures, and county and city taxes. The welfare of the whole State is promoted by the prosperity of each part, and the prosperity of each part is promoted by convenient highways; yet who would say, that the taxation for opening a road in one

county, must, for these reasons, be laid upon the whole State? These roads promote the public welfare, yet the expenses are laid on the particular district more immediately benefited. This has been sanctioned by the practice of the government since its organization, and even in the counties, (where particular districts are peculiarly benefited, or presumed to be benefited, from the fact that persons petitioning for a given road) the expenses are levied or may be levied on the persons applying, instead of subjecting the whole county to taxation for the road.

Applying this practice of the State authorities, which has existed so long, to the principles upon which the law of 1838 is based, and I am clearly of opinion that no objection can be taken on constitutional grounds to the law of 1838, certainly in point of justice none can be taken. Each man according to the theory of this law, paying according and only equivalent to the amounts of his benefits, from the particular improvement made.

It is no objection to the mode in which this power has been executed by the city, that she pays no expenses, except that she is taxed with others for the benefits conferred on her property by the opening of the street; such a procedure is only equivalent to saying, that if the benefits are not equal to the damages, and the street cannot be opened in that way, it shall not be opened at all;—or in other words, there shall not be a general tax for opening the street. The law does not, nor does the ordinance, require any man to pay more than his benefits shall be valued at. The act of 1838, ch. 226, no doubt contemplated that the benefits from the opening of a street should be assessed on all the property within the city, benefited by such improvement; *and if it had satisfactorily appeared, that property benefited by such opening was exempted by the city authorities from the proposed taxation, no doubt the ordinance would be void, because, instead of carrying out the intention of the legislature, it would have been a violation of the system of taxation which the law proposed.* But the ordinance for opening *Fayette* street does not indicate in any of its provisions, that the property on *Baltimore* street, which it ex-

empts from taxation, would be benefited by the opening of *Fayette* street; on the contrary, the presumption from such exemption is, that it was the opinion of the *City Council* that it was not benefited, and therefore should not be assessed. There is nothing in the ordinance to show that any property on *Baltimore* street was benefited, nor is there any averment in the bill that the property on *Baltimore* street was benefited. The only averment is, that *Baltimore* street is parallel with *Fayette* street, and next thereto, and that it is within the possible, if not indeed the probable range of fair assessment.

When the exercise of so high and extraordinary a power is called for, as the granting an injunction, attended with such consequences as the granting of this would be, I must see clearly and distinctly that a positive injury has been inflicted. It will not do in such a case to act on possibilities or probabilities. Suppose the injunction granted, it may turn out that by the exemption of property on *Baltimore* street, no injury has been done to the complainants, because the property on *Baltimore* street has not been benefited. Nay, it may appear that *Baltimore* street, being a great thoroughfare from *east* to *west* through the city, is, instead of being benefited materially, prejudiced by the opening of another street, (*Fayette*) parallel to it, through the city from *east* to *west*, and near thereto, by means of which the travel and business of the street is diverted to the street to be opened, and the property thereon situated thereby materially lessened in value.

The other allegations in the bill do not furnish any ground for an injunction. I have accordingly endorsed on the bill, in pursuance of the act of 1832, ch. 197, my refusal to grant the injunction.

From the refusal of the Chancellor to grant an injunction, the complainants prosecuted this appeal.

The cause was argued before DORSEY, CHAMBERS, SPENCE, and MARTIN, J.

By MAYER for the appellants, and

By B. C. PRESSTMAN for the appellees.

MARTIN, J., delivered the opinion of this court.

In the argument of this case, the counsel for the appellants has contended that the act of Assembly of 1838, ch. 226, is to be considered as an unconstitutional exercise of legislative power, and that all the proceedings of the *Mayor and City Council of Baltimore,* with respect to the extension of *Fayette* street, as exhibited in the record, were unauthorized and void. And upon this ground he has claimed the interposition of the Chancery court, to protect the property of the appellants from the enforcement of a tax, which it is alleged was illegally imposed upon it.

But we think that the counsel for the appellant has not succeeded in establishing a want of power in the legislature to pass this act.

That the power, of appropriating to a public use the property of individuals, when the public necessity or utility requires it, upon securing to the party whose property is sacrificed, a just compensation for any injury he may sustain, resides in the State, as a portion of its inherent sovereignty, is a proposition which cannot be denied.

In defining the nature and extent of this power, in the case of *Bonaparte vs. The Camden and Amboy Railroad Company,* 1 *Bald. Rep.* 221, the learned judge, after stating that the complainant by his contract of purchase, authorized by the law of the State, is so far protected, that his property cannot be transferred to the defendants, without his consent, by mere legislative power, said:

" To make such a transfer valid, it must be an appropriation to a public use, in virtue of the inherent sovereignty of the States, which carries with it the obligation to make compensation. When this is done, no contract is impaired, as all persons hold their property subject to requisitions for public service; it is protected only against arbitrary seizure, not when it is taken or appropriated by public right for public use; compensation must indeed be made, but no particular mode is prescribed by which its amount shall be ascertained. It is a principle of *Magna Charta,* recognized in all the States, that

no man shall be disseized or dispossessed of his property without due process of law, or legal process, or the judgment of a jury; but if either mode is pursued, the principle is unimpaired. A law which authorizes the appropriation of property to public use, and prescribes a mode of proceeding by which compensation shall be ascertained and made, is not obnoxious to *Magna Charta*, or its construction in *England* or in this State."

It is this supreme and controlling power over the property of individuals, which enables the State to confer upon her subordinate jurisdictions, both municipal and judicial, the right to take private property for the purpose of opening streets and roads, when in their opinion, it is demanded by the public welfare or convenience; and when property is thus taken, and accompanied by an adequate provision for the indemnification of the injured party, the appropriation is legalized by the fact, that it has been taken for a public purpose, under the authority and sanction of the State.

It is not an arbitrary seizure of property, and therefore, is not in conflict with the principles of *Magna Charta*, or the provisions of the constitution.

The taxing power is a power of vital importance; it exists in the State, like that of the eminent domain, as a part of its inherent sovereignty; it is capable, from its nature, of being greatly abused, and yet this power was granted by the original and supplemental charters of the city of *Baltimore*, to the *Mayor and City Council*, to be exercised in their discretion, upon all property within the corporate jurisdiction and limits, and without any limitation with respect to the objects on which it was to operate. This grant of power to the city, has never been questioned, and in principle cannot be distinguished from the authority delegated to the *Mayor and City Council of Baltimore*, by the act of Assembly of 1838, ch. 226.

In the case of *Burgess vs. Pue*, 2 *Gill*, 11, the Court of Appeals held, that it was competent for the legislature to delegate the power of taxation to the taxable inhabitants of a school district, for the purpose of raising a fund for the support of primary schools; and we quote the opinion of the

50    v.5

court, as directly applicable to the principle involved in this controversy. The court say—

" We think there is no validity in the constitutional question which was raised by the appellee's counsel in the course of his argument, relative to the competency of the legislature to delegate the power of taxation to the taxable inhabitants, for the purpose of raising a fund for the diffusion of knowledge, and the support of primary schools. The object was a laudable one, and there is nothing in the constitution prohibitory of the delegation of the power of taxation, in the mode adopted, to effect the attainment of it; we may say that grants of similar powers to other bodies, for political purposes, have been coeval with the constitution itself, and that no serious doubts have ever been entertained of their validity. It is therefore too late at this day to raise such an objection. The ground of objection taken in the argument to the constitutionality of the tax, seemed to be, that the act of the legislature delegating the power of taxation to the taxable inhabitants, was a violation of the fourth and twelfth sections of the bill of rights, the first of which provides, 'that all persons invested with the legislative and executive powers of government are the trustees of the public, and as such, accountable for their conduct:' and the last, 'that no aid, charge, tax, fee or fees, ought to be set, rated or levied, under any pretence, without consent of the legislature.' It is not perceived how the act in question can be deemed a violation of either of those principles of the fundamental law. The tax was levied with the consent of the legislature, because the power to impose it emanated from the legislative department of the government, and was expressly given by a law passed for that purpose, and there is nothing in it which can be considered as impairing in the slightest degree the responsibility of the law-making power to their constituents, for the due and faithful execution of the trust confided to them; because, if deemed to be unwise or inexpedient, an expression of the popular will to that effect was all that was necessary to procure its repeal."

That the General Assembly possesses the power to delegate to the *Mayor and City Council of Baltimore,* and to the commissioners or levy courts of the counties, authority to alter or open streets and roads, when, in their opinion, such an improvement is required by the public convenience, is a proposition that has been, repeatedly, and in various forms, acknowledged by both the legislative and judicial departments of the government; and is sanctioned by a practical exposition of the constitution, as exhibited in the usage and practice of the State, for a long series of years.

A statute of *New York* granting to the corporate authorities of that city, a privilege similar to the one professed to be delegated by the act of 1838, was treated by the Chancellor, in the cases of *Livingstone vs. The Mayor of New York,* 8 *Wend.* 101 and *Wiggin vs. the same party,* 9 *Paige,* 23, as an undoubted exercise of legislative power, and, we think, that this question of power must be considered as too firmly settled in *Maryland* to be questioned or disputed.

By the sixth section of the ordinance of the 9th March, 1841, passed to carry into effect the powers granted to the *Mayor and City Council* by the act of 1838, ch. 226, it is provided:

" That the commissioners after having ascertained the amount of damages, and added thereto an estimate of the amount of expenses which will be incurred in the performance of the duties required of them, shall proceed to assess the amount of said damages and expenses on all the ground and improvements within the city, the owners of which, as such, the said commissioners shall decide and deem to be benefited by accomplishing the object authorized in the ordinance aforesaid, apportioning them in just proportion according to the value of the benefit, which in the estimation of the said commissioners will accrue to each owner of any right or interest claimed in any such ground or improvements."

And it has been contended, that this ordinance is to be pronounced unconstitutional and void, on the ground, that it subjects the individuals embraced by it to an unequal and

partial tax for the prosecution of an improvement in which the whole community is interested. But the error of the argument addressed to the court on this point, exists in a misapprehension of the nature and object of this assessment. No *burden* is imposed by it upon the person on whom it operates. It is a mere requisition, that the owners of property, the value of which is enhanced by the opening of the street, shall pay for the improvement in a *ratio* to the benefit derived from it.

It cannot be denied that injustice is sometimes inflicted in the application of this principle, by an extravagant estimate of the benefits conferred by the improvements: but when this occurs, the aggrieved party may appeal to the City Court, and contest the correctness of the assessment made by the commissioners before a jury of the country. And, assuming that the amount of the assessment is only equivalent to the benefit derived by the owner from the enhanced value of his property, nothing can be more equitable and just than that he should pay it.

In the matter of the *Mayor of New York*, 11 *John. R.* 77, the commissioners appointed by the court for the enlarging of *Nassau* street, made a report of their estimate and assessment of the damage and benefit to the parties interested, in enlarging the street, by which it appeared that they assessed the benefit of the proposed improvement to certain churches in the city of *New York.* The several churches objected to the assessment, on the ground, that they were exempt from it by virtue of the general tax act which declared, that no real estate belonging to any church, or place of public worship, should be taxed by any law of the State.

The claim of the churches was overruled ; and we refer to the opinion of the court, as illustrative of the principle upon which this doctrine of assessments for benefits is supposed to stand.

The court said—

" The churches are not well founded in their claim to a total exemption of their lots from assessments, for opening, enlarg-

ing, or otherwise improving streets in the city of *New York*, made in pursuance of the act of the 9th April, 1813. These assessments are directed and intended to be made upon the owners of lands and lots who may receive benefit and advantage by the improvements. The exemption granted by the act of 1801, was in the general act for the assessment and collection of taxes; and the provisions of that act all refer to general and public taxes to be assessed and collected for the benefit of the town, county, and State at large. The words of the exemption are, " that no church or place of worship, nor any school house, &c., should be taxed by any law of the State." The word " taxes " means burdens, charges or impositions, put or set upon persons or property for public uses, and this is the definition which *Lord Coke* gives to the word *talliage*, 2 *Inst.* 532, and *Lord Holt*, in *Carth.* 438, gives the same definition, in substance, to the word tax. The legislature intended by that exemption to relieve religious and literary institutions from these public burdens, and the same exemption was extended to the real estate of any minister, not exceeding in value $1,500. But to pay for the opening of a street, in a *ratio* to the benefit or advantage " derived from it, is no burden. It is no talliage or tax within the meaning of the exemption, and has no claim upon the public benevolence. Why should not the real estate of a minister, as well as of other persons, pay for such an improvement in proportion as it is benefited? There is no inconvenience or hardship in it, and the maxim of the law, that *qui sentit commodum sentire debet et onus* is perfectly consistent with the interests and dictates of science and religion."

The same doctrine is enunciated by the Chancellor, in the case of *Livingstone vs. The Mayor of New York,* 8 *Wend.* 101; and, we think, that the act of 1838, ch. 226, and the ordinance of the 9th March, 1841, passed in pursuance of it, must be regarded in all respects as a valid exercise of legislative power.

It was manifestly contemplated by the legislature, that the amount of damages and expenses incurred in the improvement

of the streets in the city of *Baltimore*, under the act of 1838, ch. 226, should be distributed in a rateable proportion among the owners of property especially benefited; and if it had appeared that the property in *Baltimore* street was enhanced in value by this extension of *Fayette* street, the ordinance of the 15th April, 1845, exempting this property from assessment, would be void.

But there is no allegation in the bill that the property in *Baltimore* street was benefited by this proposed improvement; and in the absence of such an averment, the objection that the ordinance is to be treated in this respect, as invalid, does not arise.

It is not to be supposed, that the Chancery court would be authorized to interpose its strong arm, and arrest by an injunction, the progress of this improvement upon the mere inferential and argumentative statement, that because *Baltimore* street and *Fayette* street were parallel, the property in the former street might, possibly, or even probably, be within the range of fair assessment.

As the property in *Baltimore* street is exempted from assessment by the provisions of the ordinance, the presumption is, that it was not benefited by the extension of *Fayette* street. And if it was the object of the complainants to call into action the preventive and conservative power of the Chancery court, for the purpose of enjoining the collection of this assessment, upon the ground, that the ordinance was void; the fact on which they relied to invalidate the ordinance, should have been expressly charged in the bill, and not left to inference and conjecture. This they have not done: and upon the case made by the bill, the ordinance is to be regarded, we think, as a valid exercise of the power delegated by the act of 1838, ch. 226.

It is perfectly clear, that the Court of Chancery has no jurisdiction to supervise or re-examine the proceedings and judgment of the City Court, with respect to these assessments. 4 *John. Ch. Rep.* 352. And we think, that the order of the Chancery, refusing this injunction, was correct, and must be affirmed.

**ORDER AFFIRMED.**